LOUIS M. BRYSON, RESPONDENT, v. MILLER REALTY COMPANY, APPELLANT.

Submitted October 16, 1931—Decided February 17, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the appellant, *Frederic C. Ritger.*

For the respondent, *Herbert A. Kuvin.*

The opinion of the court was delivered by

PARKER, J.  This is a replevin suit by a purchaser of goods at a bankrupt sale, against the former landlord of the bankrupt in possession of the goods.  The landlord, a corporation, had bought them in at its own sale under a distress warrant for unpaid rent.  The question for solution in the trial court was whether the distress proceedings took precedence of the sale by the trustee in bankruptcy.  Judge Mountain, sitting in the Circuit Court without a jury, held that the purchaser at the bankrupt sale took a good title as against the landlord, the defendant in replevin.

The dates are important.  The adjudication of bankruptcy was on November 13th, 1930, on which date three months' rent was owing to defendant as landlord.  Said defendant executed a distress warrant on November 20th.  The case does not show when the seizure was made, but in the view

that we take of the case this is not material. Two months elapsed without any sale. On January 26th, 1931, there was an order to sell in the bankruptcy proceeding. On January 27th there was an actual sale by the bailiff in the distress proceeding, defendant being the purchaser, as already stated. The bankruptcy sale to the plaintiff followed shortly afterwards with the usual confirmation and delivery of a bill of sale.

The claim of the defendant-appellant is that by the fourth section of the Landlord and Tenant act (*Comp. Stat., p.* 3066), it had a "lien" on the goods in question superior to any title passing to the trustee in bankruptcy, and that any sale by him would be subject to that "lien;" and hence that when such "lien" was enforced by distress warrant and sale thereunder, such sale conveyed a title superior to that passing by the bankrupt sale. The reply made is that the right conferred on the landlord by the fourth section was not a lien in the true sense of that word, and that the landlord did not become entitled to any possessory lien until there was an actual seizure by way of distress. This is the view adopted by the court below.

A careful reading of the fourth and fifth sections of the Landlord and Tenant act, and of "An act concerning distresses" (*Comp. Stat., pp.* 1939 *et seq.*), particularly the eighth and ninth sections of the latter act (which, as will be observed, is a different piece of legislation) in connection with the decisions on this subject presently to be cited, indicates that the trial court was right in its conclusion. The fourth section of the Landlord and Tenant act provides generally that no goods of the tenant on the demised premises "shall be liable to be taken, by virtue of any execution, attachment or other process," unless the party claiming under execution shall, before removing them, pay the landlord all rent due at the time or accrued up to the removal not to exceed one year's rent. The fifth section provides that if the goods shall be taken by execution and removed, they shall not be sold until ten days after the removal, and then not unless the party claiming under the process shall pay such rent,

provided the landlord, before the expiration of the ten days, shall give notice to the officer holding the execution or process, of the amount of the rent in arrear, and claim the same. The two sections have not been reproduced in full as they are rather lengthy, but the foregoing is a sufficient epitome of their contents so far as they relate to the present case. It will be observed that under neither of these sections is there conferred upon the landlord a right of seizure of the property or any right beyond that of insisting that the goods shall not be removed in the first instance, or, if removed, shall not be sold. in the second, unless and until the rent accrued, not exceeding one year, shall have been paid. Just how the landlord is to enforce this right is not indicated by the statute. However, in the old case of *The Central Bank of New Jersey* v. *Peterson,* 24 *N. J. L.* 668, it is said that the statute was intended to give the landlord a specific lien on the property against all executions, to the extent of a year's rent coextensive with his right of distress. It was further observed on page 670 that the sheriff or other officer is expressly forbidden to take the goods, unless the party at whose suit the process is sued out (not the sheriff, but the party) shall pay the rent in arrear, "and then the sheriff is required to levy and pay the rent, in addition to the money to be paid by virtue of the process. The remedy of the landlord is by action against the sheriff, or if he thinks proper, he may apply to the court * * * to have his rent paid over to him out of the proceeds of the sale in the sheriff's hands. Unless the sheriff was liable to an action for removing the goods before the rent was paid, the court will not interfere." Under the Distress act there is, of course, a seizure by the landlord. He may take possession personally or he may employ a bailiff for that purpose, the latter being the usual course, and ordinarily there is a written distress warrant addressed to the bailiff and executed by the landlord under seal. The statute gives the right to the landlord or his "steward, bailiff, receiver or other person or persons empowered by him."

In the present case the landlord executed the distress warrant; and while it is not expressly so stipulated, it is clear that the goods were seized and that the officer sold them at public sale and the landlord bought them in. The distress warrant and the sale thereunder are the foundation of the defendant's title in this cause. It can claim no title by virtue of the so-called lien arising under the Landlord and Tenant act, and which is, as we have said, merely a right to veto the removal of the goods, or, if removed, to veto their sale under certain circumstances unless the rent is paid. There is nothing in the case to show that the landlord insisted on the payment of this rent. It may well be that the landlord did not know that there was to be a sale in the bankruptcy proceeding until too late to act in the premises. The proceeding itself was in Missouri and the sale was held in New Jersey under authority of the officers of the bankruptcy court appointed in Missouri. This may have led to confusion, but the rule seems to be settled that the pendency of a bankruptcy proceeding is notice to all the world, and, if so, the defendant was charged with notice of what was going on.

In *Woodside* v. *Adams,* 40 *N. J. L.* 417 (at *p.* 419), the distinction between the right of a landlord under the Landlord and Tenant act and his right under the Distress act is pointed out and it is expressly held that the landlord's lien under the warrant to distrain will relate to the time of actual seizure under the process of distress.

In *Wood* v. *McCardell, &c., Co.,* 49 *N. J. Eq.* 433, cited and followed in later decisions, *e. g., Hatch* v. *Van Dervoort,* 54 *Id.* 511, 518, it was held that an order appointing a receiver of a corporation and directing him to take charge of its property is "process" within the meaning of the statute. In that case the landlord petitioned the Court of Chancery for payment of his rent as a condition precedent to removal of the goods, and was upheld in taking that position. The federal courts seem to have recognized this view in bankruptcy proceedings to the extent of holding that the landlord in the

absence of distress is entitled to priority of payment out of proceeds of a bankrupt sale, but must prove his claim like other creditors. *In re Hayward,* 130 *Fed. Rep.* 720; *In re Spies-Alper Co.,* 231 *Id.* 535; *In re Braus,* 233 *Id.* 835.

In *Franz Realty Co.* v. *Welsh,* 86 *N. J. Eq.* 228, there was an adjudication of insolvency of a corporation, and the landlord filed a claim for rent with the receiver. The question there was whether the claim for rent was to be preferred to that of Welsh, an employe, claiming a preference under the Corporation act. In holding that the employe's claim was superior, the late Judge White, writing for the Court of Errors and Appeals, observed (at *p.* 230), "the right of the landlord * * * is in the absence of an actual distress, not a lien at all. * * * At most, it was but a statutory right, possibly in the nature of an inchoate lien, maturing, in effect, into an actual lien only under certain conditions prescribed by the statute."

In the recent case of *Glaser* v. *Achtel-Stetter's Restaurant,* 106 *N. J. Eq.* 150, the landlords had distrained (at *p.* 152), and the statement on page 155 that "the landlords had a lien" is obviously predicated on that fact.

In the case at bar it does not appear that the landlord gave any notice of his claim to the receiver, or referee or trustee in bankruptcy. It does not appear that the goods were removed from the premises by the plaintiff as purchaser at the bankrupt sale. Apparently defendant was in possession when this suit was begun. The question then is, as stated at the outset, whether defendant by distraining and selling *after* bankruptcy adjudicated can properly rest his title by virtue of that sale, not on a lien acquired by such distress, which was later than the bankruptcy, but on the "statutory right" to payment of rent before process is executed. Defendant is not claiming the rent, but the title to the property. We agree with the trial court that such claim is not well founded. The judgment is accordingly affirmed.